UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SANJA MAJDANDZIC,

                           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

Case # 17-CV-1172-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Sanja Majdandzic brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 10. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On October 8, 2013, Majdandzic protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[1] 161-66. She alleged disability since December 23, 2012 due to scoliosis, a stroke, psoriasis, a blood clotting condition, partial blindness, post-traumatic stress disorder ("PTSD"), depression, anxiety, and panic and bipolar disorders. Tr. 175. On January 4, 2016, Majdandzic appeared and testified at a hearing before Administrative Law Judge Susan Smith. Tr. 59-90. On March 29, 2016, the ALJ issued a decision finding that Majdandzic was not

---

[1] "Tr." refers to the administrative record in this matter.

1

disabled within the meaning of the Act. Tr. 42-54. On September 18, 2017, the Appeals Council denied Majdandzic's request for review. Tr. 1-7. Thereafter, Majdandzic commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Majdandzic's claim for benefits under the process described above. At step one, the ALJ found that Majdandzic had not engaged in substantial gainful activity since the application date. Tr. 44. At step two, the ALJ found that Majdandzic has the following severe impairments: antiphospholipid antibody disorder status post stroke, migraines, scoliosis, anxiety, PTSD, panic and bipolar disorders, and polysubstance abuse. Tr. 44. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal a Listings impairment. Tr. 45-46.

Next, the ALJ determined that Majdandzic retains the RFC to perform light work[2] with additional limitations. Tr. 46-52. Specifically, the ALJ found that Majdandzic can occasionally stoop, kneel, balance, crouch, crawl, and climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds; must avoid hazards like unprotected heights and dangerous moving machinery; and cannot perform jobs that require driving or good peripheral vision. Tr. 46. The ALJ also found that Majdandzic can perform only simple, routine, and repetitive tasks; requires a low-stress environment with no high production quotas or fast-paced assembly line requirements; can have only superficial contact with the public incidental to the work being performed; and can tolerate only little change in work structure or routine. *Id.*

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

At step four, the ALJ indicated that Majdandzic has no past relevant work. Tr. 52. At step five, the ALJ relied on the VE's testimony and found that Majdandzic can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 53-54. Specifically, the VE testified that Majdandzic could work as a cleaner, cafeteria attendant, and stock checker. Tr. 53. Accordingly, the ALJ concluded that Majdandzic was not disabled under the Act. Tr. 53-54.

## II. Analysis

Majdandzic argues that remand is required because the ALJ improperly relied upon the opinion of state agency review consultant Dr. Ferrin to determine the mental limitations in the RFC assessment. ECF No. 7-1 at 18-21; ECF No. 11. Specifically, Majdandzic asserts that Dr. Ferrin's opinion was unreliable because it was "stale." *Id.* She also contends that because the ALJ "rel[ied] on a stale opinion and reject[ed] the only other available opinion, the ALJ made her mental RFC determination without any medical opinions." *Id.* For the reasons that follow, the Court finds that Dr. Ferrin's opinion was not stale and that the ALJ properly determined Majdandzic's mental RFC.

### A. Dr. Ferrin's opinion was not stale.

Majdandzic argues that Dr. Ferrin's opinion was stale because her condition "worsened" after he reviewed the record and before the ALJ decided her case. ECF No. 7-1 at 19. The Court disagrees.

A stale medical opinion does not constitute substantial evidence to support an ALJ's findings. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). A gap of time between when an opinion is rendered and the disability hearing and decision does not

automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time. *See, e.g.*, *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

On January 3, 2014, Dr. Ferrin reviewed Majdandzic's record and opined that "despite a psychiatric impairment," Majdandzic can understand and remember instructions, sustain attention and concentration for tasks, relate adequately with coworkers and supervisors, and adapt to basic and routine workplace changes. Tr. 101.

The ALJ afforded "great weight" to Dr. Ferrin's opinion because it recognized Majdandzic's limitations and was consistent with the record. Tr. 51. The ALJ noted that "Dr. Ferrin's opinion did not account for [Majdandzic]'s subjective complaints regarding anxiety" even though "[t]he record shows she has consistently endorsed symptoms of anxiety that would impede her ability to interact with others[,] particularly the public." *Id.* The ALJ concluded that "[t]he absence of a limitation related to [Majdandzic]'s anxiety slightly detracts from the weight of the opinion." *Id.*

Two years after Dr. Ferrin rendered his opinion, the ALJ conducted Majdandzic's hearing and issued a decision on her benefits application. Tr. 42-54, 59-90. Majdandzic argues that her condition "worsened" after Dr. Ferrin rendered his opinion and before the ALJ decided her case, which made Dr. Ferrin's opinion stale. ECF No. 7-1 at 19.

6

Majdandzic asserts that her visits to the emergency room indicate that her condition worsened. Although Majdandzic has been to the emergency room on several occasions for a variety of reasons (*see, e.g.*, Tr. 346, 354, 363, 382), there is no evidence that these visits were due to some deterioration in her condition after Dr. Ferrin rendered his opinion. Majdandzic also visited the emergency room on several occasions *before* Dr. Ferrin rendered his opinion. Treatment notes from Highgate Medical Group and DENT Neurologic Institute, which Dr. Ferrin reviewed (Tr. 95, 101), reveal that Majdandzic frequently went to the emergency room. Tr. 262, 308.

Majdandzic also argues that mental evaluations that found diminished concentration support her assertion that her condition deteriorated. Treatment notes that post-date Dr. Ferrin's opinion do reveal diminished concentration (*see, e.g.*, Tr. 559, 582, 579, 566, 570); however, these notes do not indicate that this was due to deterioration of her condition. A September 12, 2013 treatment note from DENT Neurologic Institute, which Dr. Ferrin reviewed (Tr.101), also noted that Majdandzic had diminished concentration (Tr. 310).

Similarly, Majdandzic argues that her conditioned worsened based on depression screenings that post-date Dr. Ferrin's opinion that reveal mild to moderately severe depression. Tr. 548, 551, 558, 577, 580. In his assessment, however, Dr. Ferrin specifically acknowledged that Majdandzic alleged disability due to depression (Tr. 93) and records that he reviewed discussed her depression as well. For example, hospital discharge notes from December 23, 2012 diagnosed Majdandzic with depression. Tr. 245-46. Similarly, a July 15, 2013 treatment note from Highgate Medical Group notes depression and related prescribed medications, and an October 24, 2013 treatment note from DENT Neurologic Institute found Majdandzic to have moderate depression. Tr. 264-65, 300. Additionally, consultative examiner Christine Ransom,

7

Ph.D.'s report noted that Majdandzic is "mostly depressed lately." Tr. 329. Thus, it appears that depression was an ongoing issue for Majdandzic and was not a condition that developed or worsened after Dr. Ferrin rendered his opinion.

Moreover, the ALJ's opinion acknowledged and discussed record evidence that post-dated Dr. Ferrin's opinion and pointed out that much of that evidence revealed normal mental status examinations and that Majdandzic's condition was stable. Tr. 48, 50-51.

For all of the reasons stated, the Court finds that Dr. Ferrin's opinion was not stale.

**B. The ALJ did not make the RFC determination without a supporting medical opinion.**

Majdandzic argues that the ALJ further erred because she relied on Dr. Ferrin's stale opinion and "reject[ed] the only other available opinion," *i.e.*, consultative examiner Dr. Ransom's opinion, therefore making the mental RFC determination "without any medical opinions." ECF No. 7-1 at 20. The Court disagrees.

As discussed above, the Court finds that Dr. Ferrin's opinion was not stale. Moreover, the ALJ did not reject Dr. Ransom's opinion; instead, she afforded it "some weight." Tr. 51. Dr. Ransom examined Majdandzic on December 19, 2013 and opined that she will have mild difficulty following and understanding simple directions and instructions; performing simple tasks independently; maintaining attention and concentration for simple tasks; maintaining a simple regular schedule; and learning simple new tasks. Tr. 332. She also opined that Majdandzic will have moderate difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress. *Id.*

The ALJ afforded some weight to Dr. Ransom's opinion because it recognized Majdandzic's limitations, but the ALJ found that it "overstate[d] those limitations." Tr. 51. The ALJ explained that Majdandzic's mental status examinations conducted after Dr. Ransom's

examination showed that she had "largely normal results." *Id.* Specifically, the ALJ noted that the later examinations did "not show even a mild degree of limitation with [Majdandzic]'s ability to perform simple tasks." *Id.* In support of this finding, the ALJ cited and discussed record evidence revealing that Majdandzic was cooperative, alert, and oriented in all areas, had clear speech that was coherent and spontaneous, had goal directed thoughts, exhibited stable and appropriate affect, and demonstrated intact concentration, memory, and fund of knowledge. *Id.* (citing Tr. 535). Majdandzic was also able to recall three out of three test objects in her formal memory testing. *Id.* (citing Tr. 542). In accordance with the SSA's regulations, the ALJ was entitled to discount Dr. Ransom's opinion because she found it inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4).

The ALJ also discounted Dr. Ransom's opinion because it appeared "largely based on [Majdandzic]'s own endorsements, which are not entirely persuasive." Tr. 51. This was proper as the ALJ extensively analyzed and discussed Majdandzic's credibility and found her only partially credible (Tr. 52),[3] a finding that Majdandzic does not dispute.

The ALJ's RFC assessment is consistent with portions of Drs. Ferrin and Ransom's opinions. The ALJ found, for example, that Majdandzic can perform only simple, routine, and repetitive tasks, which aligns with Dr. Ferrin's opinion that she can sustain attention and concentration for tasks and Dr. Ransom's opinion that she has only mild difficulties performing,

---

[3] An ALJ's credibility determination may influence how she weighs the medical opinions, especially when those opinions are based on the claimant's subjective statements. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (noting that "[t]he ALJ's decision to discount [the plaintiff]'s credibility influenced the ALJ's weighing of medical opinions that were based in part on [the plaintiff]'s reports"). When the ALJ finds the claimant's allegations not credible, she is entitled to discount the opinion of a medical source who relied on the claimant's subjective complaints. *See id.* ("Because the ALJ declined to credit [the plaintiff], the ALJ was entitled to discount [the treating physician]'s opinions insofar as they relied on [the plaintiff]'s subjective complaints.") (citation omitted); *see also Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (finding that the ALJ was not required to give controlling weight to treating physician's opinion where "it was unsupported by the objective medical evidence" and "based on [the plaintiff's] subjective complaints") (summary order).

learning, and maintaining attention and concentration for simple tasks and has moderate difficulty performing complex tasks. The ALJ also found that Majdandzic can have only superficial contact with the public, which is consistent with her finding that Majdandzic's anxiety symptoms would impede her ability to interact with others, and Dr. Ransom's opinion that she is moderately limited in this area. Finally, the ALJ found that Majdandzic can tolerate only little change in work structure or routine, which aligns with Dr. Ferrin's opinion that she can adapt to basic and routine workplace changes.

Moreover, in accordance with her duty to assess Majdandzic's RFC "based on all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), the ALJ also discussed Majdandzic's treatment records, hearing testimony, and credibility in making the RFC determination. Accordingly, in light of this evidence and the opinions set forth above, the Court finds that the ALJ's mental RFC determination is supported by substantial evidence.

### C. The ALJ properly relied on Dr. Ferrin's opinion.

Majdandzic argues for the first time in her reply brief that Dr. Ferrin's opinion was entitled to "less weight" and was "unreliable" because he did not examine her and only reviewed her record before rendering an opinion. ECF No. 11 at 3-4. As an initial matter, the Court need not consider arguments raised for the first time in reply papers. *See Mayer v. Neurological Surgery, P.C.*, No. 15-CV-0864(DRH)(ARL), 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016) (citing *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007)) (citation omitted). Nonetheless, the Court considers and rejects this argument.

The SSA's regulations provide that it will generally give more weight to an opinion from a source who has examined the claimant than to an opinion from a non-examining source. *See* 20 C.F.R. § 416.927(c)(1). "District courts in this Circuit have stated, as a general proposition, that

while reports from nonexamining consultants are entitled to some evidentiary weight, they cannot constitute substantial evidence." *Sundown v. Colvin*, No. 1:15-CV-00814(MAT), 2018 WL 1081014, at *3 (W.D.N.Y. Feb. 28, 2018) (quotation mark and citations omitted); *see also D'augustino v. Colvin*, No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sept. 16, 2016) ("[E]ven where a nonexamining opinion is afforded weight, *it alone* cannot be considered substantial evidence.") (emphasis added).

Here, as explained above, the ALJ did not rely on Dr. Ferrin's opinion as sole support for her RFC determination and even discounted portions of that opinion because it did not recognize Majdandzic's anxiety and inability to interact with others. The ALJ also evaluated the opinion of Dr. Ransom, who examined Majdandzic, and incorporated many of her findings into the RFC assessment, and she considered the medical evidence and Majdandzic's testimony and credibility. Accordingly, the Court finds that the ALJ did not err on this basis.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 19, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court